1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   R.N., a minor, by and through her Guardian          No.  2:20-cv-00562-KJM-JDP
     ad Litem, NICOLE NEFF, et al.,
12                                                        ORDER
                     Plaintiffs,
13
              v.
14
     TRAVIS UNIFIED SCHOOL DISTRICT,
15   et al.,

16                   Defendants.

17

18              Two separate motions to dismiss are before the court in this case involving the

19   alleged physical and psychological abuse of a minor by a paraeducator at her school.  Defendants

20   Travis Unified School District ("TUSD"), Solano County Office of Education ("SCOE") and

21   Special Education Teacher Christopher Mears ("Mr. Mears") (collectively "District defendants")

22   move to dismiss ten of plaintiffs' claims.  District Mot. to Dismiss ("District MTD") at 2, ECF

23   No. 12-1.  Plaintiffs minor R.N. and her parents Nicole Neff and Chris Neff ("Mr. and Mrs.

24   Neff") oppose the motion to dismiss.  Pls.' Opp'n to District MTD ("District Opp'n"), ECF No.

25   18.  District defendants have replied.  District Reply, ECF No. 19.  District defendants also

26   request the court take judicial notice of both TUSD and SCOE's complaint procedures.  Req. for

27   Jud. Not., ECF No. 12-3.

28   /////

                                                 1

Defendant Lilia Gumapas ("Ms. Gumapas") also moves to dismiss five of plaintiffs' claims.  Gumapas Mot. to Dismiss ("Gumapas MTD") at 5, ECF No. 13-1.  Plaintiffs oppose this motion as well.  Pls.' Opp'n to Gumapas MTD ("Gumapas Opp'n"), ECF No. 17.  Ms. Gumapas has replied.  Gumapas Reply, ECF No. 20.

On June 26, 2020, the court heard oral argument, by videoconference, on both motions to dismiss.  Hr'g Minutes, ECF No. 21.  Valerie Rose appeared for plaintiffs, Megan Symons appeared for District defendants, and Lynn Garcia appeared for Ms. Gumapas.  *Id.*  On July 22, 2020, the parties filed a stipulation regarding a City of Fairfield Police report plaintiffs' counsel received on July 7, 2020.  Stip., ECF No. 24; *see also* Rose Decl., ECF No. 23.  Though the parties disagree over whether the police report contains new facts, they stipulate that if the court grants either defendants' motions to dismiss in full or in part, the court give plaintiffs leave to amend to file a second amended complaint.  *Id.* at 2–3.

For the reasons set forth below, the court **GRANTS** District defendants' motion to dismiss and **GRANTS** in part and **DENIES** in part Ms. Gumapas' motion to dismiss.  The court **GRANTS** the parties' stipulation and gives plaintiffs leave to file a second amended complaint.  The court also **GRANTS** District defendants' request for judicial notice.  Req. for Jud. Not., ECF No. 14-3.

I.      FACTUAL BACKGROUND AND ALLEGATIONS

During the 2018-2019 school year, plaintiff R.N., a minor diagnosed with autism, Smith Lemli Optiz Syndrome ("SLO"), dyspraxia and intellectual disabilities, attended the Center Elementary School ("CES") in Solano County.  First Am. Compl. ("FAC") ¶¶ 4, 23, ECF No. 9.  R.N.'s disabilities entitled her to receive special education services and support under the Individuals with Disabilities Education Act ("IDEA").  *Id.* ¶ 23.  Mr. Mears and Ms. Gumapas served as R.N.'s teacher and paraeducator, respectively.  *Id.* ¶ 24.

Plaintiffs allege R.N. witnessed and experienced "ongoing physical and psychological abuse" from Ms. Gumapas.  *Id.* ¶ 25.  This alleged abuse includes, but is not limited to, events that took place on November 14, 2018, when several witnesses observed and reported "multiple incidents" in which Ms. Gumapas allegedly:

2

> *kicked R.N. while forcing R.N. out of a sensory area, yelled at R.N.*
> *while physically forcing her to stand, forced R.N. into her desk,*
> *grabbed R.N. by both of her ankles and pulled her by her legs*
> *dragging R.N. across the ground approximately a foot before*
> *dropping R.N.'s legs onto the floor, grabbed R.N. by her shoulders,*
> *pushing her down by her shoulders to force R.N. into a chair,*
> *grabbed R.N. by her jacket, pushed her to the ground, dragged R.N.*
> *while yelling at her and physically held R.N. down while forcing R.N.*
> *to pick up grapes from the ground.*

*Id.* ¶ 26 (emphasis in original). Plaintiff alleges the SCOE Principal of Special Education, Ilah Feeney, only reported Ms. Gumapas' abuse of R.N. to the police after the November 14 events, despite numerous prior instances of physical and psychological abuse of which Mr. Mears and other administrators were aware. *Id.* ¶¶ 28–29. On the evening of November 14, Principal Feeney informed the Neffs of Ms. Gumapas' abuse of their daughter earlier that day. *Id.* ¶ 35. The Neffs claim the abuse began months before November 14 and the delay between the beginning this behavior and when the Neffs became aware of it allegedly caused them emotional distress and deprived them "of the ability to contemporaneously comfort their daughter and to provide appropriate counseling, medical or psychological care and support at the time of her abuse." *Id.* ¶¶ 33–35. When he spoke to them, Principal Feeney also informed the Neffs that school officials removed Ms. Gumapas from CES after the events on November 14. *Id.* ¶ 35.

      In the operative complaint, plaintiffs claim they do not yet know "the full extent of all the abuse suffered by Plaintiff R.N. [. . .]." *Id.* ¶ 31. "On information and belief," plaintiffs allege administrators and employees of TUSD and SCOE, including Mr. Mears, knew of Ms. Gumapas' abuse, but "failed to take action to intervene to stop the abuse, failed to document or report the abuse, and failed to retrain and/or discipline" Ms. Gumapas. *Id.* ¶¶ 29–30. "[T]he full extent of all the abuse suffered by Plaintiff R.N.," *id.* ¶ 31, and other students as well becomes more evident in light of the City of Fairfield Police report, which plaintiffs' counsel provided to the court after she received it through a subpoena. Rose Decl., ECF No. 23; Rose Decl. Ex. A (transcript from body camera footage in City of Fairfield Police report), ECF No. 23. The report is based in part on videos of interviews on November 15, 2018, with Principal Feeney

1    and Mr. Mears, as well as of three classroom aides, Mariah Garrick, Sabrina True and Teresa

2    Koon.  Rose Decl. ¶¶ 2–4.  Transcripts of those interviews revealed all five school staff members

3    were aware of prior incidents with Ms. Gumapas.

4                  Each person reported that Ms. Gumapas has, on other occasions, used

5    some form of inappropriate discipline, even if it was not as serious as the events plaintiffs allege

6    occurred on November 14, 2018.  *See* Rose Decl. Ex. A at 62–63 ("Ms. Garrick: Like when a

7    kid's like yelling and being auditory and just-just being a child with autism, she starts like tapping

8    their mouth—like not slapping them or hitting them, just like 'hey, hey, be quiet' to their own

9    mouth."); *id*. at 90 ("Ms. True: As a coworker, she's too rough with the kids. And there's been a

10   lot of incidents with her that she-she's too hands on."); *id*. at 108 ("Ms. Koon: But, uh, it just

11   looked funny because I've seen her do other things—on other days—that are kind of

12   questionable.").  Additionally, two staff members, Ms. True and Ms. Koon, claimed school

13   leadership knew about Ms. Gumapas' prior behavior and had even taken steps to discipline her or

14   at the very least prevent her from continuing to use these abusive methods.  *Id.* at 91–93 ("Ms.

15   True: Uh, I believe she's been told multiple times you can't be that hands on with the students."

16   And stating "yes" to "Have you ever made any complaints or reports to your supervisors about

17   previous behavior?"); *id*. at 113 (Ms. Koon: "She doesn't take direction very well—even from the

18   teacher of the classroom.").

19                  In his interview, Mr. Mears, a named defendant in this action, even acknowledged

20   he "wouldn't say [laughs] that she's a good employee," while also stating "[Ms. Gumapas] hasn't

21   been like physically aggressive towards the students until yesterday."  *Id.* at 40–41.  The police

22   report does not, however, reflect unanimity among all of Ms. Gumapas' coworkers about how to

23   characterize the events of November 14.  Some coworkers indicate they believe her actions that

24   day violated the law, while Mr. Mears does not.  *Compare* Mr. Mears' answers, *id*. at 46 ("I don't

25   believe she was willfully trying to harm [R.N.]") *with* Ms. Garrick's answers, *id*. at 73 ("My

26   answer would be yes" to whether Ms. Gumapas willfully broke law), Ms. True's answers, *id*., at

27   101 ("my answer is yes" to whether Ms. Gumapas crossed line) and Ms. Koon's answers at *id*. at

28   121 ("the dragging and pushing her down did seem a little willful on Lily's part").

On January 25, 2018, SCOE issued its report, which found multiple individuals complained Ms. Gumapas raised her voice and physically forced R.N. to comply with her directions in "four different incidents" on November 14.  FAC ¶ 36.  In May 2019, plaintiffs presented written government claims to TUSD for their alleged "injuries, losses, and damages" resulting from the events of November 14; in June 2019, TUSD and SCOE notified plaintiffs they were rejecting their claims.  *Id.* ¶¶ 19–22.  On March 12, 2020, plaintiffs filed this suit against defendants.  Compl., ECF No. 1.  On April 20, 2020, the court granted plaintiffs leave to file an amended complaint.  Order, ECF No. 6.  On April 23, 2020, plaintiffs filed their amended complaint.  *See generally* FAC.  On May 5, 2020, the court granted plaintiffs' petition appointing Nicole Neff as guardian ad litem for minor plaintiff R.N.  Order, ECF No. 10.

Plaintiffs put forward twelve causes of action in their first amended complaint: (1) violation of Fourth Amendment rights under 42 U.S.C. § 1983; (2) violation of the Americans with Disabilities Act ("ADA"); (3) violation of the Rehabilitation Act; (4) negligence; (5) negligent hiring, supervision, or retention of an employee; (6) battery; (7) discrimination in violation of the Unruh Civil Rights Act; (8) discrimination in violation of the California Education Code; (9) violation of the mandatory reporting duty; (10) discrimination in violation of the Bane Act; (11) intentional infliction of emotional distress (IIED); and (12) negligent infliction of emotional distress (NIED).  *Id.*  ¶¶ 52–190.  All claims, except for battery, are at issue in one or other of the pending motions.  *See* District MTD at 2; *see also* Gumapas MTD at 5.

## II.   LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a

1   claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

2   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something

3   more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and

4   conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting

5   *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss

6   for failure to state a claim is a "context-specific task that requires the reviewing court to draw on

7   its judicial experience and common sense." *Id.* at 679.  Ultimately, the inquiry focuses on the

8   interplay between the factual allegations of the complaint and the dispositive issues of law in the

9   action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

10          In making this context-specific evaluation, this court must construe the complaint

11   in the light most favorable to the plaintiff and accept as true the factual allegations of the

12   complaint.  *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).  This rule does not apply to "'a legal

13   conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986) quoted

14   in *Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to

15   judicial notice" or to material attached to or incorporated by reference into the complaint.

16   *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001).  A court's

17   consideration of documents attached to a complaint or incorporated by reference or matter of

18   judicial notice will not convert a motion to dismiss into a motion for summary judgment.  *United*

19   *States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d

20   1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977,

21   980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to

22   dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

23   III.   DISCUSSION

24          A.   District Motion to Dismiss

25          District defendants contend the court should dismiss plaintiffs' case for: (1) failure

26   to allege facts sufficient to establish a § 1983 claim; (2) failure to state a claim for relief under the

27   ADA; (3) failure to state a claim for relief under the Rehabilitation Act; (4) plaintiffs Nicole and

28   Chris Neff's lack of standing to state a claim of negligence; (5) plaintiffs Nicole and Chris Neff's

6

1   lack of standing to state a claim of negligent, hiring, supervision or retention; (6) failure of

2   plaintiffs' Unruh Civil Rights Act claim as a matter of law; (7) plaintiffs' failure to exhaust their

3   administrative remedies and to state a claim for relief for a violation of California Education Code

4   section 220; (8) failure of plaintiffs' claim for violation of a mandatory reporting duty under

5   California Penal Code section 11166 fails as a matter of law; (9) failure of plaintiffs' Bane Act

6   claim to state any facts that the District or its employees threatened, intimidated, coerced or

7   interfered with R.N.'s public education rights; (10) plaintiffs Nicole and Chris Neff's lack of

8   standing and failure to allege facts sufficient to state a claim of IIED; and (11) plaintiffs Nicole

9   and Chris Neff's lack of standing and failure to allege facts sufficient to state a claim of NIED.

10   MTD at 9–10.

11          The court addresses each of these arguments in turn.

12              1.    Section 1983 (First Cause of Action): Mr. Mears

13          District defendants argue plaintiffs failed to provide sufficient factual allegations

14   (1) to demonstrate Mr. Mears had "any actual knowledge or notice" of Ms. Gumapas' abusive

15   actions and (2) to show Mr. Mears did not provide adequate training to Ms. Gumapas.  District

16   MTD at 12.  With respect to the training claim, District defendants state plaintiffs have not

17   alleged a "'pattern of similar constitutional violations by untrained employees.'"  *Id.* (citing

18   *Flores v. City of Los Angeles*, 758 F.3d 1154, 1158–59 (9th Cir. 2014) (citations omitted)).

19          In opposition, plaintiffs point to their allegations Mr. Mears knew of Ms.

20   Gumapas' "ongoing abuse" and "use of excessive force" throughout the 2018-2019 school year.

21   District Opp'n at 10 (citing FAC ¶¶ 29, 60–61).  Even though the "only specific allegations"

22   involve the November 14, 2018 events, plaintiffs reason they have advanced sufficient facts to

23   state a plausible claim because R.N. is a "non-verbal disabled child who could neither report the

24   abuse nor articulate its effects" and so any evidence of other abuse is solely in the hands of

25   District defendants.  District Opp'n at 10–11 (citing *Preschooler II v. Clark County School Bd. of*

26   *Trustees*, 479 F.3d 1175, 1182 (9th Cir. 2007)).  The police report plaintiffs received after motion

27   practice, including the interviews about the November 14, 2018 events, provides additional detail

28   that plaintiffs could use to support their allegations about prior instances of abuse.  *See generally*

7

Rose Decl.  The court notes the police report only to the extent it grants plaintiffs leave to file an amended complaint.

Even without the police report, both at hearing and in their filings with the court, plaintiffs present a thoughtful and well-reasoned argument regarding the pleading difficulties unique to R.N.'s case.  R.N. is similar in this respect to the plaintiff in *Preschooler II*, who was a non-verbal child with autism and a neurological disorder.  *Preschooler II*, 479 F.3d at 1180–81 ("Preschooler II's mother alleges that the full extent of the abuse is not known, and Preschooler II cannot be counted on to report it since he was so young at the time and is non-verbal as a result of his autism.").  Given R.N.'s disabilities, as with Preschooler II's, defendants including Mr. Mears are likely best positioned to know about incidents involving R.N. at school.

Plaintiffs' complaint here, however, is distinguishable from that in *Preschooler II*, in that it does not provide sufficient factual allegations to plausibly state a claim for relief under Section 1983.  In *Preschooler II*, the Ninth Circuit found the plaintiff alleged sufficient facts for a Section 1983 claim by describing seven specific instances of abuse from September 2002 to April 2003.  *Preschooler II*, 479 F.3d at 1178, 1182–83 ("(1) Preschooler II was assaulted at circle time by Defendant LiSanti [. . .] (2) LiSanti maliciously body slammed Preschooler II into a chair [. . .] (3) On four occasions, LiSanti forced Preschooler II to 'walk without shoes across the asphalt' from the school bus to the classroom [. . .] (4) On one occasion, LiSanti documented in writing noticeable bruising to Preschooler II's arms.").  The Ninth Circuit did not interpret each of these alleged events as providing a basis for an excessive force claim, *id.* at 1181; but when accepting plaintiff's allegations as true, the court did view the slamming and assault allegations as showing "disregard of [the school officials'] responsibilities in hiring, training, supervising, disciplining and reporting abuses committed by LiSanti," *id.* at 1183.

In this case, by contrast, plaintiffs allege abuse occurring only on one day, saying on that day Ms. Gumapas physically abused R.N. by grabbing, pushing and pulling her over the course of the day.  FAC ¶ 26.  These allegations alone do not make out a plausible claim that Mr. Mears had actual knowledge or notice of Ms. Gumapas' abuse and failed to train her

/////

adequately.  Plaintiffs allege only vaguely that Mr. Mears knew about Ms. Gumapas' treatment of students and failed to provide her with the requisite training, as in the following:

> On information and belief, during the 2018/2019 school year while GUMAPAS subjected R.N.  to ongoing physical and psychological abuse as punishment in response to her behaviors, responsible administrators and employees of TUSD and SCOE, including Mears […] were aware of GUMAPAS' abuse of R.N., but failed to take action to intervene to stop the abuse, failed to discipline or retrain staff to prevent further abuse, failed to document or report incidents of abuse, and failed to report the abuse to law enforcement as required.

*Id.* ¶ 29.  These kind of allegations do not defeat District defendants' motion to dismiss plaintiffs' Section 1983 claim against Mr. Mears.

The court GRANTS District defendants' motion to dismiss the Section 1983 claim, as alleged against Mr. Mears.  The court provides plaintiffs' leave to file an amended complaint, based on the parties' stipulation and the police report now provided to the court.  Given that Ms. True and Ms. Koon each reported to the police that Mr. Mears was aware of Ms. Gumapas' problematic discipline of R.N. and other students prior to November 14, their statements could well support factual allegations sufficient to plead Mr. Mears' actual or constructive knowledge of Ms. Gumapas' behavior and his failure to correct it through necessary training.

      2.      ADA (Second Cause of Action) and Rehabilitation Act (Third Cause of Action): TUSD and SCOE

      a)      Exhaustion Requirement

District defendants argue the court must dismiss plaintiffs' claims under the ADA and Rehabilitation Act because R.N. failed to exhaust administrative remedies available to her under the IDEA by seeking an impartial due process hearing, with the opportunity to appeal an unfavorable ruling.  District MTD at 16 (citing 20 U.S.C. § 1415(f)–(g) (describing parental rights to request hearing and appeal ruling)).  In opposition, plaintiffs insist the exhaustion requirement does not apply to their claims because they seek damages unavailable for IDEA

1   claims for disability discrimination, as opposed to administrative remedies such as "a change in

2   school placement, or additional hours of occupation or speech therapy" to redress a denial of a

3   free and appropriate public education (FAPE).  District Opp'n at 14.

4          The IDEA does not "restrict or limit the right[s]" to seek remedies under the

5   Constitution, ADA, or Rehabilitation Act, "except that before the filing of a civil action under

6   such laws seeking relief that is also available under this subchapter, the procedures under

7   subsections (f) and (g) shall be exhausted to the same extent as would be required had the action

8   been brought under this subchapter."  20 U.S.C. § 1415(1).  Whether a plaintiff seeks relief also

9   available under the IDEA and therefore must meet "§ 1415(1)'s exhaustion rule hinges on

10  whether a lawsuit seeks relief for the denial of a free appropriate public education."  *Fry v.*

11  *Napoleon Cmty. Sch.*, 137 S. Ct. 743, 754 (2017).  For example, when a denial of FAPE also

12  violates the Rehabilitation Act, "that plaintiff must first submit her case to an IDEA hearing

13  officer."  *Id.*  To determine when a plaintiff seeks relief for the denial of FAPE, courts must look

14  "to the 'substance' of, rather than the labels used in, the plaintiff's complaint. . . or, in legal speak,

15  the gravamen—of the plaintiff's complaint."  *Id.* at 755 (citations omitted).  In this inquiry, courts

16  must answer the following questions: "[f]irst, could the plaintiff have brought essentially the

17  same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a

18  public theater or library? And second, could an *adult* at the school—say, an employee or visitor—

19  have pressed essentially the same grievance?"  *Id.* at 756 (articulating "*Fry* test") (emphasis in

20  original).

21         Here, plaintiffs correctly state the exhaustion requirement does not apply.  In the

22  operative complaint, they seek damages for alleged discrimination on the basis of R.N.'s

23  disability, rather than an alleged denial of R.N.'s right to FAPE.  FAC ¶¶ 74–97.  Plaintiffs come

24  closest to mentioning a denial of FAPE when they allege defendants

25         removed Plaintiff from the regular school environment solely by
26         reason of her disability yet failed to provide her with a level of
       services 'comparable' to the level of services provided to individuals
27     who are not disabled because the paraeducator they placed her with
       subjected her to abuse.

28

10

1    *Id.* ¶ 90; *see id.* ¶ 80 ("TUSD and SCOE excluded Plaintiff R.N. from participation in and denied

2    her the benefits of the services, programs or activities [] provided, and she was entitled to receive,

3    by placing her in an environment where she was subjected to physical and psychological abuse by

4    her paraeducator."). Plaintiffs use these allegations to support their claim that defendants

5    "excluded [R.N.] from participation in and denied [her] the benefits of the state program by

6    reason of her disability." *Id.* Plaintiffs also seek monetary damages, "which are not available

7    under the IDEA." *E.H. v. Brentwood Union Sch. Dist.*, No. C13-3243 TEH, 2013 WL 5978008,

8    at *5 (N.D. Cal. Nov. 4, 2013) (citing *Blanchard v. Morton Sch. Dist.*, 509 F.3d 934, 936 (9th Cir.

9    2007)). Moreover, plaintiffs have not made "an initial decision to pursue the administrative

10   process and a later shift to judicial proceedings," which indicates they are not "making 'strategic

11   calculations about how to maximize the prospects of such a remedy.'" *Paul G. v. Monterey*

12   *Unified Sch. Dist.*, 933 F.3d 1096, 1101 (9th Cir. 2019) (quoting *Fry*, 137 S. Ct. at 757). In fact,

13   "[i]t is improbable" plaintiffs can obtain "adequate relief" through the IDEA administrative

14   process because the "hearing officer lacks the authority to grant the relief sought." *Paul G.*,

15   933 F.3d at 1101 (quoting *Hoeft v. Tucscon Unified Sch. Dist.*, 967 F.2d 1298, 1303–04 (9th Cir.

16   1992)).

17          Plaintiffs' claims also meet the *Fry* test for determining whether an ADA claim is

18   properly construed as an IDEA claim. First, plaintiffs could have brought essentially the same

19   claim if the alleged conduct occurred at another public facility, such as a library or pool and not a

20   school. Second, an adult, such as another employee, could have brought a similar ADA claim

21   based on the nature of Ms. Gumapas' alleged abuse if the adult had been subjected to it. This is

22   because plaintiffs' claims are not "fundamentally educational"; they do not request "access to a

23   particular kind of school as required by" an IEP. *Paul G.*, 933 F.3d at 1101. Instead, the claim is

24   one of "equality of access to public facilities" because R.N.'s disability allegedly led the District

25   defendants to subject her to an abusive environment. *Paul G.*, 933 F.3d at 1101 (quoting *Fry*,

26   137 S. Ct. at 756). Other courts in this district have found the gravamen of the complaint does

27   not involve a denial of FAPE in similar circumstances. *P.H. v. Tehachapi Unified Sch. Dist.*, No.

28   1:17-CV-00257-DAD-JLT, 2017 WL 3085020, at *4 (E.D. Cal. June 9, 2017) (finding plaintiff's

1    claims do not require exhaustion of IDEA remedies when "the complaint alleges that defendants

2    isolated P.H. from other school children during the school day, resulting in the denial of school

3    programs and services, and physically and psychologically abused her because of her

4    disability.").

5           Plaintiffs' ADA claim is not one for a denial of FAPE and they need not have

6    exhausted administrative remedies under the IDEA.  The court next moves to the merits of

7    plaintiffs' claims under the ADA and Rehabilitation Act.

8                    b)      ADA and Rehabilitation Act Claims

9           District defendants argue plaintiffs have not pled factual allegations as necessary

10   to show they exhibited "deliberate indifference" to the intentional discrimination of R.N. because

11   of her disability.  District MTD at 15.  Specifically, they say plaintiffs failed to plead any facts to

12   demonstrate District defendants "knew that GUMAPAS was engaging in alleged misconduct

13   prior to November 14, 2018."  *Id.*  Plaintiffs counter they sufficiently pled "knowledge of prior,

14   known, and ongoing abuse," pointing to the complaint, FAC ¶¶ 29, 30, 39, 81, 82, and say the

15   seriousness of the events of November 14 allow the court to infer prior instances of such abuse,

16   *id.*, ¶¶ 26, 36.

17          Title II of the ADA provides: "No qualified individual with a disability shall, by

18   reason of such disability, be excluded from participation in or be denied the benefits of the

19   services, programs, or activities of a public entity, or be subjected to discrimination by any such

20   entity."  42 U.S.C. § 12132.  Section 504 of the Rehabilitation Act provides: "No otherwise

21   qualified individual with a disability . . . shall, solely by reason of her or his disability, be

22   excluded from the participation in, denied the benefits of, or be subjected to discrimination under

23   any program or activity receiving Federal financial assistance."  29 U.S.C. § 794.  Because of

24   their similarity, the court treats the two statutory schemes as one and evaluates them under a

25   single framework in the analysis below.  *Zukle v. Regents of University of California*, 166 F.3d

26   1041, 1045 n.11 (9th Cir. 1999).  Under the dual ADA and Rehabilitation Act analysis, a plaintiff

27   must show: "(1) she is a qualified individual with a disability; (2) she was excluded from

28   participation in or otherwise discriminated against with regard to [. . .]services, programs, or

1  activities, [provided by a public entity or entity receiving federal financial assistance,

2  respectively] and (3) such exclusion or discrimination was by reason of her disability."  *Lovell v.*

3  *Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002).

4                Plaintiffs have not sufficiently pled facts to plausibly state a claim for relief under

5  the "deliberate indifference" standard of the ADA and Rehabilitation Act, which requires "a

6  culpable mental state" in which the defendant "must 'recognize [. . .] unreasonable risk and

7  actually intend [. . .] to expose the plaintiff to such risks without regard to the consequences to the

8  plaintiff.'"  *Patel v. Kent Sch. Dist.*, 648 F. 3d 965, 974–76 (9th Cir. 2011) (internal citation

9  omitted).  In their complaint, plaintiffs merely offer conclusory allegations of District defendants'

10 awareness of abuse prior to November 14.  *See* FAC ¶ 82 ("Plaintiff further alleges that MEARS

11 [. . .], knew of and were deliberately indifferent to the abuse committed by GUMAPAS.").  And

12 plaintiffs' allegations regarding District defendants' actions following the abuse on November

13 14—they made a police report, called Mr. and Mrs. Neff, and fired Ms. Gumapas, FAC ¶¶ 28, 35,

14 could support an inference the District defendants were appropriately responsive to any instance

15 of disability discrimination.  Taking the sparse allegations in the operative complaint as true,

16 plaintiffs have not pled that TUSD and SCOE acted with the "culpable mental state" necessary to

17 plausibly state a claim for relief under the "deliberate indifference" standard.

18               Though the operative complaint does not include these necessary facts, the

19 transcript from the body camera footage in the police report plaintiffs provided to the court does

20 appear to provide additional bases for pleading the District defendants recognized the risk of

21 Ms. Gumapas' behavior and still exposed R.N. to that risk.  This new information supports the

22 court's granting plaintiffs leave to file an amended complaint, as it does below.

23               The court GRANTS District defendants' motion to dismiss plaintiffs' ADA and

24 Rehabilitation Act claims.  As with plaintiffs' Section 1983 claims, the court allows plaintiffs

25 leave to file an amended complaint that references and relies on the transcript from the body

26 camera footage in the police report.

27 /////

28 /////

3. <u>Mr. and Mrs. Neff's Standing to Pursue Negligence (Fourth Cause of Action), Negligent Hiring (Fifth Cause of Action), IIED (Eleventh Cause of Action), and NIED (Twelfth Cause of Action) Claims: TUSD, SCOE, and Mr. Mears</u>

District defendants assert Mr. and Mrs. Neff lack standing to bring their negligence, IIED and NIED claims.  District MTD at 18.  The court addresses here whether Mr. and Mrs. Neff have standing to pursue these claims separately.

a) <u>Negligence (Fourth Cause of Action), Negligent Hiring (Fifth Cause of Action), and NIED (Twelfth Cause of Action) Claims</u>

With regard to Mr. and Mrs. Neff's negligence claims, District defendants argue no case law establishes "a duty of care based on a 'special relationship' between the parents of a student and the defendants," so as to support standing.  *Id.*  Plaintiffs disagree and point to precedent they say does control here.  District Opp'n at 15 (citing *Phyllis P. v. Superior Court*, 183 Cal. App. 3d 1193, 1196 (1986) (holding a "special relationship" between parents and school officials exists when school officials failed to inform parents following "the first series of sexual assaults" upon their minor child).

With claims of negligence, a plaintiff must prove "[t]he traditional elements of duty, breach of duty, causation and damages." *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1072 (1992).  "Whether a defendant owes a duty of care is a question of law." *Id.*  Direct victim cases are those "in which damages for serious emotional distress are sought as a result of a breach of [a] duty owed to the plaintiff" arising from a preexisting relationship between the plaintiff and defendant. *Id.* at 1073.  As a matter of law, a school owes a duty of care not only to its students, but also to parents because the school stands "in loco parentis" and the students' care is "entrusted to" them.  *Phyllis P.*, 183 Cal. App. 3d at 1196.

In the amended complaint, plaintiffs allege they have standing to pursue these claims because defendants owed them the following duties of care: (1) "to adequately supervise R.N. and to place her in an appropriate educational environment that was safe and free from danger and abuse"; (2) "to notify [R.N.'s parents] of the assaults perpetrated upon their child,

pursuant to their special relationship"; and (3) "to anticipate the wrongful acts of a third person, as such acts were reasonably foreseeable."  FAC ¶¶ 99–101.  The court agrees; each of these duties reveal District defendants have a "special relationship" with Mr. and Mrs. Neff.  As alleged, District defendants failed to meet a legal obligation to report abuse to the parent of a child and to protect the child from danger, a failure which they "should have foreseen would cause" emotional distress to the child's parents.  *Phyliss P.*, 183 Cal.App.3d at 1197.  Therefore, plaintiffs have standing to pursue these claims against District defendants.

> b)      IIED (Eleventh Cause of Action)

With regard to plaintiffs' IIED claim, District defendants maintain Mr. and Mrs. Neff are neither "bystanders" nor "direct victims" of the alleged events, and so also do not have standing to pursue this claim.  District MTD at 18–19.  In their opposition, plaintiffs assert Mr. and Mrs. Neff were "direct victims" because the District defendants "act[s] in *loco parentis* to the student while at school."  District Opp'n at 16 (citing *C.A. v. William S. Hart Union High School Dist.*, 53 Cal. 4th 861 (2012)).  IIED cases require outrageous conduct on the part of the defendant, "[b]ecause the outrageous conduct must be directed toward the plaintiff, the plaintiff must generally be present at the time of the conduct, and the defendant must know that the plaintiff is present."  *Christensen v. Super. Ct.*, 54 Cal. 3d 868, 905-06 (1991).  However, courts within the Ninth Circuit have looked to *Phyllis P.*, 183 Cal. App. 3d at 1196, and found "a school owes a duty of care not only to a student, but also to the student's parent," which supports a "position that a parent can state an IIED claim based on alleged harm directly suffered by the parent as a result of a defendant's action or inaction regarding their child."  *Zuccaro v. Martinez Unified Sch. Dist.*, No. 16-CV-02709-EDL, 2016 WL 10807692, at *9 (N.D. Cal. Sept. 27, 2016).  The court finds District defendants' mandatory reporting duty creates a legal relationship between the school and the Neffs, such that Mr. and Mrs. Neff do have standing as "direct victims" to pursue any alleged IIED claims.

> c)      Conclusion

The court finds Mr. and Mrs. Neff have standing to pursue their negligence and IIED claims.

1               **4.**        <u>Unruh Civil Rights Act (Seventh Cause of Action): TUSD and SCOE</u>

2              With respect to plaintiffs' Unruh Civil Rights Act claims against TUSD and

3    SCOE, District defendants argue a public school is not a "business establishment" that falls under

4    the ambit of the law.  District MTD at 19–20 (citing *Zuccaro,2016 WL 10807692.*; *Doe v.*

5    *Lutheran High Sch. Ass'n*, 170 Cal. App. 4th 828, 839 (2009) ("In our society, however, private

6    elementary and secondary schools are overwhelming not-for-profit enterprises. . . And public

7    schools, of course, are run on a nonprofit basis by the government.") (additional citations

8    omitted)).  In opposition, plaintiffs highlight cases classifying public schools as a "business

9    establishment."  District Opp'n at 17 (citing *Walsh v. Tehachapi Unified Sch. Dist.*,

10   827 F. Supp. 2d 1107, 1123 (E.D. Cal. 2011) (additional citations omitted)).  Even if the court

11   finds a public school is a "business establishment," District defendants assert plaintiffs still have

12   failed to demonstrate the intentional discrimination necessary for Unruh Act claims.  District

13   MTD at 21.  Plaintiffs argue they have pled sufficient facts to show intentional discrimination.

14   District Opp'n at 18.

15             The Unruh Act provides, "[a]ll persons within the jurisdiction of this state are free

16   and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability,

17   medical condition, genetic information, marital status, sexual orientation, citizenship, primary

18   language, or immigration status are entitled to the full and equal accommodations, advantages,

19   facilities, privileges, or services in all business establishments of every kind whatsoever." Cal.

20   Civ. Code § 51(b); *see also Cohen v. City of Culver City*, 754 F.3d 690, 701 (9th Cir. 2014)

21   (explaining Unruh Act disability discrimination claims are derivative of ADA disability

22   discrimination claims); *Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 669 (2009) (same).

23                a)        <u>Business Establishment</u>

24             As a threshold matter, the court finds R.N.'s school is a "business establishment"

25   under the Unruh Act, while recognizing there is a split among district courts within the Ninth

26   Circuit on the question, and the California Supreme Court has not resolved it.  In *Zuccaro v.*

27   *Martinez Unified School District*, the court found a public school that provided education to a

28   child with disabilities was "acting as a public servant rather than a commercial enterprise and is

1    therefore not subject to the Unruh Act." *Zuccaro*, 2016 WL 10807692 at *13.  As plaintiffs note,

2    the court in *Zuccaro* cited a state court case, *Doe*, which held a private religious school is not a

3    "business establishment" for purposes of the Unruh Act.  *Zuccaro*, 2016 WL 10807692, at *11–

4    12 (quoting *Doe v. California Lutheran High Sch. Ass'n*, 170 Cal. App. 4th 828, 838–41).  The

5    court in *Zuccaro* also reasoned from other California cases, one holding a city providing

6    sidewalks and curbs to its citizens is not a business establishment and another reaching the same

7    conclusion with respect to a county animal shelter, in concluding the public school was not a

8    business establishment.  *Zuccaro*, 2016 WL 10807692, at *12–13 (citing *Carter v. City of L.A.*,

9    224 Cal. App. 4th 808, 825 (2014) ("We think a public entity providing sidewalks and curbs to its

10   citizens does so as a public servant, not a commercial enterprise.") (citations omitted); *Gregory v.*

11   *Cnty. of L.A.*, 2014 WL 6610198 at *4–5 (Cal. App. 2d Dist. Nov. 21, 2014) ("County animal

12   shelters are not functionally equivalent to a commercial enterprise; they are local, governmental

13   entities that serve a social purpose and are largely funded by the county.")).

14           The analysis in *Zuccaro* does not consider that a public school is "readily

15   distinguishable" from city sidewalks or a county animal shelter, which do not have the same

16   "quintessential character of providing public accommodations and services to students" as do

17   public schools.  *Whooley v. Tamalpais Union High School Dist.*, 399 F.Supp.3d 986, 998 (N.D.

18   Cal. Jul. 30, 2019) (quoting *Yates v. East Side Union High School Dist.*, No. 18-CV-02966-JD,

19   2019 WL 721313 at *2 (N.D. Cal. Feb. 2019)); *see also Walsh v. Tehachapi Unified School Dist.*,

20   827 F. Supp. 2d 1107, 1123 (E.D. Cal. Oct. 28, 2011) (holding a public school "constitutes a

21   'business establishment'" because the California Supreme Court "has determined that the

22   Legislature intended the term 'business establishment' to be interpreted 'in the broadest sense

23   reasonably possible.'") (quoting *Isbister v. Boys' Club of Santa Cruz, Inc.*, 40 Cal.3d 72, 78

24   (1985)); *D.K. ex rel. G.M. v. Solano Cty. Office of Educ.*, No. 2:08CV00534 MCE DAD,

25   2008 WL 5114965, at *6 (E.D. Cal. Dec. 2, 2008) ("SCOE is a business establishment within the

26   meaning of Cal. Civ. Code § 51"). Additionally, finding that a public school qualifies as a

27   "business establishment" under the Unruh Act aligns the Unruh Act's jurisdiction with that of the

28   ADA, which also applies to public schools.  *Yates*, 2019 WL 721313, at *3 (citing *K.M. ex rel.*

1    *Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1094 n.1 (9th Cir. 2013) ("[A] violation of the

2    ADA is, per se, a violation of the Unruh Act.") (additional citations omitted)); *Sullivan v. Vallejo*

3    *City Unified School Dist.*, 731 F. Supp. 947, 952–53 (E.D. Cal. Mar. 1, 1990) ("In like fashion,

4    since public schools were among those organizations listed in the original version of the Unruh

5    Act, it must follow that for purposes of the Act they are business establishments as well.").  Here,

6    the court reaches the same conclusion and finds TUSD and SCOE constitute "business

7    establishments" under the Unruh Act.

8                  b)    Intentional Discrimination

9          Because the Unruh Act claims derive from plaintiffs' ADA disability

10   discrimination claims, for the same reasons explained above in analyzing plaintiffs' ADA claim,

11   plaintiffs have not adequately pled District defendants exhibited deliberate indifference to

12   intentional disability discrimination against R.N.  The court GRANTS District defendants'

13   motion to dismiss plaintiffs' Unruh Act claims, with leave to amend.

14         5.    Cal. Educ. Code § 220 (Eighth Cause of Action): TUSD and SCOE

15         District defendants assert the court must dismiss plaintiffs' claims under California

16   Education Code section 220, both for failure to exhaust administrative remedies and because

17   plaintiffs have not alleged facts necessary to demonstrate a practice of severe and pervasive

18   disability discrimination.  District MTD at 21–22.[1]  In their opposition, plaintiffs again argue their

19   allegations "on information and belief that TUSD and SCOE had actual knowledge that Gumapas

20   physically abused disabled students" demonstrate a plausible claim for relief.  District Opp'n at

21   18–19.

22         Section 220 of the California Education Code prohibits discrimination based on

23   protected characteristics, including disability, in any "program or activity conducted by an

_____

[1] District defendants request the court take judicial notice of both the SCOE and TUSD complaint
procedures.  *See* Req. for Jud. Not., ECF No. 12-3; Ex. A ("SCOE procedures"); *id.*, Ex. B
("TUSD procedures").  "The court may judicially notice a fact that is not subject to reasonable
dispute because it: [. . .] (2) can be accurately and readily determined from sources whose
accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  The court GRANTS
District defendants' request, finding the documents existence as the documents represented
"cannot reasonably be questioned."

educational institution that receives, or benefits from, state financial assistance or enrolls pupils who receive state student financial aid." *See* Cal. Educ. Code § 220.  To succeed on a section 220 claim, a plaintiff must show she suffered severe, pervasive and offensive discrimination or harassment on the basis of disability, which effectively deprived her of equal access to educational benefits and opportunities.  *Donovan v. Poway Unified Sch. Dist.*, 167 Cal. App. 4th 567, 579 (2008) (citation omitted).  She must also show the District acted with deliberate indifference in the face of "actual knowledge" of such discrimination or harassment.  *Id.*

The court finds plaintiffs have not exhausted their administrative remedies. Plaintiffs filed a complaint with SCOE, the local education agency, on May 30, 2019.  FAC ¶¶ 20–22.  Although plaintiffs filed the complaint a bit later than required, they presented SCOE with "Applications for Permission to Present Late Claims," which SCOE granted on June 6, 2019. FAC ¶ 20; *see also* Cal. Code Regs., tit. 5 § 4630(b) ("An investigation of alleged unlawful discrimination, harassment, intimidation or bullying shall be initiated by filing a complaint not later than six months from the date the alleged discrimination, harassment, intimidation or bullying occurred.").  SCOE had the authority to extend the time for filing, "upon written request" from plaintiffs "setting forth the reasons for the extension."  Cal. Code Regs., tit. 5 § 4630(b).  As plaintiffs allege, SCOE denied plaintiffs' complaint on June 10, 2019.  FAC ¶ 21. Based on the record before the court, the court finds plaintiffs did not exhaust their administrative remedies upon receiving this denial, because they failed to file an appeal to the State Department of Education as required.  *See* Cal. Educ. Code § 262.3(d) ("Notwithstanding any other provision of law, a person who alleges he or she is a victim of discrimination may not seek civil remedies pursuant to this section until at least 60 days have elapsed from the filing of an appeal to the State Department of Education.").

Therefore, the court GRANTS District defendants' motion to dismiss plaintiffs' claims under California Education Code section 220.  Although it would appear plaintiff cannot amend to cure this claim, the court does not rule that possibility out if plaintiffs can amend while fully satisfying Federal Rule of Civil Procedure 11.

/////

1          6.       Cal. Penal Code § 11166 (Ninth Cause of Action)

2                   District defendants maintain plaintiffs have failed to plausibly state a claim for

3     relief under California Penal Code section 11166, a mandatory reporting statute, which

4     defendants claim does not create a private right of action and which does not protect parents like

5     Mr. and Mrs. Neff.  District MTD at 22–23 (citing *Randi W. v. Muroc Joint Unified School Dist.*,

6     14 Cal. 4th 1066, 1087 (1997)).  They also argue plaintiffs have not shown "the alleged failure to

7     report was the proximate cause of her injury (i.e., that as a result of the failure to report, R.N. was

8     subjected to further abuses.)."  District MTD at 23.  Plaintiffs disagree and argue a private right of

9     action for failure to report is provided in California Government Code § 815.6.  District Opp'n at

10    19–20.

11                  The California Child Abuse and Neglect Reporting Act provides, "a mandated

12    reporter shall make a report to an agency [. . .] whenever the mandated reporter, in the mandated

13    reporter's professional capacity or within the scope of the mandated reporter's employment, has

14    knowledge of or observes a child whom the mandated reporter knows or reasonably suspects has

15    been the victim of child abuse or neglect."  Cal. Pen. Code § 11166(a).  The Government Code

16    section to which plaintiffs point provides, "Where a public entity is under a mandatory duty

17    imposed by an enactment that is designed to protect against the risk of a particular kind of injury,

18    the public entity is liable for an injury of that kind proximately caused by its failure to discharge

19    the duty unless the public entity establishes that it exercised reasonable diligence to discharge the

20    duty."  Cal. Gov't Code § 815.6.

21                  Despite the lack of case law, the relevant statutes provide a private right of action

22    for a failure to report child abuse.  While California Government Code section 815.6 does not

23    include an express cross-reference to California Penal Code section 11166, section 815.6 applies

24    to a teacher's reporting obligations under section 11166.  In addition, the case defendants cite,

25    *Randi W*, is distinguishable from the instant case.  There, a minor child who had been molested

26    by a school vice principal brought a number of claims, including negligence per se for failing to

27    report the abuse, against "other school districts and their employees, alleging that defendants had

28    written letters recommending the vice principal without divulging his history of sexual

1   molestations." *Randi W.*, 14 Cal. 4th at 1066.  The court found the other school districts were not

2   "child care custodians" under the Reporting Act and they did not have knowledge of or observe

3   or reasonably suspect the vice principal would abuse plaintiff, who attended a different school.

4   *Id.* at 1087.  As the court reasoned, "the act was intended to protect only those children in

5   custodial care of the person charged with reporting the abuse, and not all children who may at

6   some future time be abused by the same offender." *Id.*

7          Plaintiffs, however, have not alleged sufficient facts to demonstrate the District

8   defendants did not "exercise[. . .] reasonable diligence to discharge the duty," as required to

9   proceed.  As noted above, the only specific instance of abuse the plaintiffs allege prompted the

10  District defendants to make an immediate police report and fire Ms. Gumapas, which suggests the

11  District defendants exercised some reasonable care in observing their mandatory reporting duty

12  upon learning of Ms. Gumapas' behavior.  *See* FAC ¶ 35.  While plaintiffs highlight other

13  allegations regarding the District defendants' failure to report numerous other instances of alleged

14  abuse.  District Opp'n at 20 (citing FAC ¶¶ 31, 33, 34, 38, 45, 59), their descriptions of

15  unreported abuse prior to November 14, 2018 are conclusory do not plausibly state a claim for

16  relief under § 11166.

17         The court GRANTS District defendants' motion to dismiss plaintiffs' claim

18  defendants failed to report child abuse, with leave to amend.

19                 7.      Bane Act (Tenth Cause of Action): Mr. Mears

20         In their motion to dismiss, the District defendants argue plaintiffs have failed to

21  state a claim of relief against Mr. Mears under California's Bane Act because they do not provide

22  any "factual allegations demonstrating that TUSD, SCOE, or MEARS were personally involved

23  in any threatening, coercive, violent or intimidating conduct."  District MTD at 23.  In their

24  opposition, plaintiffs argue they have pled sufficient facts to show District defendants deprived

25  R.N. of her state constitutional right to a school-based education "by way of abuse and

26  acquiescence."  District Opp'n at 20 (citing FAC ¶¶ 164–165).

27         The Bane Act prohibits intentionally interfering with a person's state civil rights

28  by way of threats, intimidation, or coercion.  *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 332 (1998).

The essence of such a claim is that "the defendant, by the specified improper means . . . tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or force the plaintiff to do something he or she was not required to do." *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 883 (2007).  The elements of a Bane Act excessive force claim are essentially identical to those of a § 1983 excessive force claim, *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014), though a Bane Act claim additionally requires a showing of "a specific intent to deprive that person of those [constitutional] rights," which can be proven by "reckless disregard" for those same rights.  *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018) (quoting *United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993)).

Given the similarities between excessive force claims under § 1983 and under the Bane Act, the court need not analyze District defendants' arguments about plaintiffs' Bane Act claims.  For the same reasons provided above regarding the § 1983 claims, and given the additional element of intent plaintiffs must plead to state a Bane Act claim, which plaintiffs have not adequately pled here, the court GRANTS District defendants' motion to dismiss plaintiffs' Bane Act claim.  The court grants plaintiffs leave to amend.

8.     <u>Plaintiff's IIED (Eleventh Cause of Action) and NIED (Twelfth Cause of Action) Claims</u>

a)     <u>IIED (Eleventh Cause of Action)</u>

District defendants assert plaintiff R.N. fails to state an IIED claim against Mr. Mears because R.N. has not alleged "specific facts" regarding behavior that is "so outrageous as to shock the conscience" or that Mr. Mears engaged in conduct "with an intent to cause [R.N.] severe emotional distress."  District MTD at 24.  In their opposition, plaintiffs refer to their allegations that Mr. Mears knew of abuse throughout the 2018-2019 school year, arguing they plead the requisite reckless disregard for the probability of causing R.N.'s emotional distress.  District Opp'n at 21 (citing FAC ¶¶ 26–30, 177).

The elements of an IIED claim are (1) extreme and outrageous conduct by the defendant with the intent to cause, or reckless disregard as to the probability of causing,

/////

22

1    emotional distress; (2) plaintiff's severe or extreme emotional distress; and (3) causation.

2    *Christenson v. Superior Court*, 54 Cal. 3d 868, 903 (1991).

3              As currently pled, plaintiffs' complaint does little more than recite the elements of

4    an IIED claim against Mr. Mears.  Plaintiffs allude to previous instances of ongoing abuse of

5    which Mr. Mears was aware, FAC ¶¶ 29–30, but provide no specific facts which, if proven true,

6    would demonstrate intent to cause or reckless disregard for inflicting emotional distress on

7    plaintiff R.N or Mr. and Mrs. Neff.  As District defendants point out, the only specific instance of

8    alleged abuse resulted in a police report, FAC ¶ 28, undermining the suggestion an inference can

9    be drawn of Mr. Mears' intent to cause or reckless disregard for the infliction of emotional

10   distress on plaintiffs.

11             The motion to dismiss this claim too is GRANTED, but with leave to amend in

12   light of the new information plaintiffs have now obtained.

13                          b)        NIED (Twelfth Cause of Action)

14             With respect to plaintiffs' NIED claim, District defendants assert such a claim "is

15   not an independent tort in California" and therefore the court must dismiss R.N.'s claim against

16   District defendants.  District MTD at 25.  Plaintiffs do not respond directly to this argument in

17   their opposition, but instead state they will fall back on pursuing their NIED and negligence

18   claims separately, in the alternative.  District Opp'n at 15 n. 1.

19             California law on this issue is clear.  "We have repeatedly recognized that '[t]he

20   *negligent* causing of emotional distress is not an independent tort, but the tort of *negligence*.'"

21   *Burgess*, 2 Cal. 4th at 1072 (emphases in original) (citations omitted).  As a result, for claims

22   involving emotional distress a plaintiff must plead negligence by alleging the "traditional

23   elements of duty, breach of duty, causations and damages"; the issue of defendants' duty is a

24   "question of law."  *Id.*

25             Because NIED is not an independent tort, the court GRANTS District defendants'

26   motion to dismiss plaintiffs' NIED claims, without leave to amend.  Even though the law

27   precludes plaintiffs from pleading NIED as an independent tort in an amended complaint, under

28   *Burgess* plaintiffs may use the underlying factual allegations to support their negligence claim.

                                                    23

c)      Conclusion

The court GRANTS the District defendants' motion to dismiss plaintiffs' IIED and negligence claims, with leave to amend.  The court GRANTS district defendants' motion to dismiss plaintiff R.N.'s NIED claim, with prejudice.

9.      Punitive Damages: Mr. Mears

With respect to plaintiffs' prayer for punitive damages against Mr. Mears, District defendants assert the following: (1) Mr. Mears is immune from punitive damages because the alleged conduct occurred in his official capacity as a public-school teacher; and (2) plaintiffs have failed to state facts supporting a demand for punitive damages.  District MTD at 25–26. Plaintiffs, in their opposition, point out District defendants have pointed to no law that shows immunity for public school officials in cases involving punitive damages.  Plaintiffs also stand on their repeated allegations that Mr. Mears' actions were "undertaken with an improper an [sic] evil motive amounting to malice" as sufficient to support their prayer for punitive damages.  District Opp'n at 22 (citing FAC ¶¶ 108, 129, 171, 183, 190).

Punitive damages require a plaintiff show by "clear and convincing evidence" the defendant is guilty of oppression, fraud or malice.  Cal. Civ. Code § 3294(a).  Malice is "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others."  Cal. Civ. Code § 3294(c)(1).

Even taking plaintiffs' allegations as true, they are insufficient to support a request for punitive damages.  Each of the paragraphs referencing Mr. Mears' taking of actions "maliciously, fraudulently and oppressively" fails to include any allegations of specific acts.  *See* FAC ¶ 108.

The court GRANTS District defendants' motion to dismiss plaintiffs' request for punitive damages against Mr. Mears, with leave to amend.

B.      Ms. Gumapas' Motion to Dismiss

In her motion to dismiss, defendant Gumapas asserts the following: (1) Mr. and Mrs. Neff fail to plead a viable claim of negligence; (2) Mr. and Mrs. Neff fail to state a claim for

IIED; (3) Mr. and Mrs. Neff lack standing and fail to state a claim for NIED; (4) plaintiffs fail to state a claim for relief under California Penal Code section 11166(a) because Ms. Gumapas had no duty to self-report; and (5) plaintiffs do not state sufficient facts to allege a claim for punitive damages. Gumapas MTD at 2. The court addresses her arguments below.

> 1. <u>Negligence (Fourth Cause of Action), IIED (Eleventh Cause of Action), and NIED (Twelfth Causes of Action)</u>

Similar to District defendants, Ms. Gumapas argues Mr. and Mrs. Neff have failed to state a claim for relief to proceed on their negligence, IIED and NIED causes of action. Gumapas MTD at 8–13. For the reasons set forth above, the court does not consider the negligence and NIED claims separately. The court finds Mr. and Mrs. Neff do have standing to pursue these claims against Ms. Gumapas, but for the same reasons stated above, the facts alleged in plaintiffs' complaint lack the specificity required at this stage. *See* FAC ¶¶ 99-103, 174-176; *Phyllis P.*, 183 Cal. App. 3d at 1196 (defendants have a duty to notify the student's parent after "learning of the first series of" assaults). The court will grant plaintiffs leave to file an amended complaint, given that additional details now available to them from the police report appear to provide a basis for amendment. *See generally* Rose Decl.

The court GRANTS Ms. Gumapas' motion to dismiss Mr. and Mrs. Neff's negligence and IIED claims, with leave to amend. The court also GRANTS Ms. Gumapas' motion to dismiss Mr. and Mrs. Neff's independent NIED claim against her, without leave to amend.

> 2. <u>California Penal Code § 11166 (Ninth Cause of Action)</u>

As do District defendants, Ms. Gumapas argues plaintiffs' claims she violated her mandatory reporting duty must fail. Gumapas MTD at 13–14. Ms. Gumapas reasons that because the only specific instance of alleged abuse involved her own actions, California's mandatory reporting duty does not apply because otherwise she would be forced impermissibly to forfeit her Fifth Amendment right against self-incrimination. *Id.* (citing *Kassey S. v. City of Turlock*, 212 Cal. App. 4th 1276, 1280 (2013)). In their opposition, plaintiffs argue Ms. Gumapas

1     allegedly witnessed other instances of abuse by other school employees, which supports their

2     pleading she failed her duty as a mandatory reporter.  Gumapas Opp'n at 7 (citing FAC ¶¶ 37,

3     44).

4             Plaintiffs' allegations of alleged abuse by other school employees here provide

5     even less basis for relief than plaintiffs' mandatory reporting claims against District defendants,

6     discussed above.  Plaintiffs make only one non-specific, somewhat conclusory assertion that Ms.

7     Gumapas witnessed abuse of R.N. by other teachers, which does not plausibly state a claim for

8     relief.  *See* FAC ¶¶ 37, 44.  The additional information from the police report, however, suggests

9     some greater basis for plaintiffs pursuing a claim against Ms. Gumapas for failing to report abuse

10    of R.N. by other staff.  The court grants plaintiffs leave to file an amended complaint including

11    this cause of action, as against Ms. Gumapas.

12            As a result, the court GRANTS Ms. Gumapas' motion to dismiss plaintiffs'

13    mandatory reporting claims against her, with leave to amend.

14            3.      Punitive Damages

15            Ms. Gumapas argues plaintiffs have failed to allege facts, which would

16    demonstrate she acted "maliciously, fraudulently and oppressively" so as to state a plausible

17    claim for punitive damages against her.  Gumapas MTD at 16–17.  In opposition, plaintiffs point

18    to the alleged abuse on November 14, 2018, when Ms. Gumapas allegedly kicked, yelled,

19    dragged, pushed and restrained plaintiff R.N.  Gumapas Opp'n at 7 (citing FAC ¶ 26).  Plaintiffs

20    further point to other aspects of their complaint, in which they allege Ms. Gumapas' actions were

21    "both ongoing and intentional as a form of punishment or coercion."  *Id.* (citing FAC ¶¶ 25, 37,

22    108, 129, 171, 183, 190).

23            The factual allegations regarding the events on November 14, 2018 alone state a

24    plausible claim for punitive damages against Ms. Gumapas.  If taken as true, her actions on that

25    date represent "despicable conduct which is carried on by the defendant with a willful and

26    conscious disregard of the rights or safety of others."  Cal. Civ. Code § 3294(c)(1).  The

27    specificity with which plaintiffs describe Ms. Gumapas' alleged actions allows an inference of

28    malice on the part of Ms. Gumapas.

26

1         The court DENIES Ms. Gumapas' motion to dismiss plaintiffs' claim for punitive

2 damages.

3 IV.    <u>CONCLUSION</u>

4         For the foregoing reasons, the court orders as follows:

5         1)  District Defendants' Motion to Dismiss Plaintiffs' first cause of action, as

6               alleged against Mr. Mears is GRANTED, with leave to amend.

7         2)  District Defendants' Motion to Dismiss Plaintiffs' second and third causes of

8               action is GRANTED, with leave to amend.

9         3)  District Defendants' Motion to Dismiss Plaintiffs' seventh cause of action is

10               GRANTED, with leave to amend.

11         4)  District Defendants' Motion to Dismiss Plaintiffs' eighth cause of action is

12               GRANTED, with leave to amend.

13         5)  District Defendants' Motion to Dismiss Plaintiffs' ninth cause of action is

14               GRANTED, with leave to amend.

15         6)  District Defendants' Motion to Dismiss Plaintiffs' tenth cause of action is

16               GRANTED, with leave to amend.

17         7)  District Defendants' Motion to Dismiss Plaintiffs' eleventh cause of action is

18               GRANTED, with leave to amend.

19         8)  District Defendants' Motion to Dismiss Plaintiffs' twelfth cause of action is

20               GRANTED, without leave to amend.

21         9)  District Defendants' Motion to Dismiss Plaintiffs' claim for punitive damages

22               against Mr. Mears is GRANTED, with leave to amend.

23       10) Ms. Gumapas' Motion to Dismiss Mr. and Mrs. Neff's fourth and eleventh

24               causes of action is GRANTED, with leave to amend.

25       11) Ms. Gumapas' Motion to Dismiss Mr. and Mrs. Neff's twelfth cause of action

26               is GRANTED, without leave to amend.

27       12) Ms. Gumapas' Motion to Dismiss Plaintiffs' ninth cause of action is

28               GRANTED, with leave to amend.

13) Ms. Gumapas' Motion to Dismiss Plaintiffs' tenth cause of action is GRANTED, with leave to amend.

14) Ms. Gumapas' Motion to Dismiss Plaintiffs' claim for punitive damages against her is DENIED.

15) District defendants' request to take judicial notice is GRANTED.

Plaintiff shall have 21 days from the date of this order to file an amended complaint.

This order resolves ECF Nos. 7, 11, 12, 12-3, 13 and 24.

IT IS SO ORDERED.

DATED:  December 8, 2020.

_____

CHIEF UNITED STATES DISTRICT JUDGE